### E. T. COBB v. A. H. GOOCH.

Decided June 10, 1905.

**1.—School Land Contest—Filing Application—Irregularity.**

Where, before the doors of the county clerk's office were opened to receive applications for the purchase of school land just placed on the market, defendant had secured a position near the door, from which he was thrown with force by plaintiff, who was behind him in the waiting line, and then defendant procured a deputy clerk to take his application into the office through the back door and have it filed prior to that of plaintiff, the latter's action in using

force and collusion to deprive defendant of his advantageous position neutralized the irregularity in the filing of defendant's application.

**2.—Same—Suit on Rejected Application—Equity.**

Plaintiff, suing by virtue of a rejected application, was not entitled to receive the aid of the court in setting aside the award to plaintiff by the Land Commissioner where he did not come into court with clean hands.

Appeal from the District Court of Glasscock. Tried below before Hon. Jas. L. Shepherd.

*Beall & Beall,* for appellant.

*John B. Littler, E. Douthit* and *S. H. Morrison,* for appellee.

CONNER, CHIEF JUSTICE.—The contestants in this case are rival claimants of sections 24 and 36, in block 36, and section 30 in block 35, of State school land surveys in Glasscock County. Both parties claim by virtue of applications to purchase and actual settlement on section 30 as the home section, and the remainder as additional thereto. The applications of appellant were made and filed with the county clerk of said county at twelve o'clock and fifty-six minutes, a. m., of August 1, 1902, and those of appellee were made and filed with said clerk about two o'clock a. m. on the same day. The applications, obligations and payments of both parties were regular, but the lands were awarded to appellant by the Commissioner of the General Land Office on the 6th day of October, 1902, appellee's applications being rejected on the same day. The action was instituted in the form of trespass to try title by appellee, and the controverted issues upon the trial were actual settlement on appellee's part at the time he made and filed his applications, and whether appellant's priority in filing was surreptitiously and fraudulently acquired. The court found both of these issues in appellee's favor, and hence gave him judgment for the lands in controversy. That appellant was an actual settler upon section 30 at the time his applications to purchase were made and filed is not controverted. His right to recover, indeed, can not be controverted save upon the ground that his priority in filing was illegally obtained, as found by the court, and the assignments of error present only the question of the sufficiency of the evidence to sustain the court's findings of fact on the issues stated.

We have carefully considered the evidence, and do not see our way clear to overrule the finding that appellee was an actual settler at the time he filed his applications to purchase, and hence approve such finding. On the other issue, however, our conclusion is in appellant's favor. The following are the pertinent material facts: It was generally known that the sections of school land in controversy, together with some thirty-five or forty other sections, would be upon the market subject to sale on August 1, 1902, and the appellant, appellee and numerous other persons had assembled and stationed themselves at the south, or main entrance, of the courthouse in which the county clerk kept his office. It is undisputed that appellant was prior to appellee in position, appellant having stationed himself in the door, or on the step of said

entrance, appellee being among those immediately behind him.  Appellee's evidence, and the court's findings, are to the effect that appellant was standing, with several others, just inside of the door when the sheriff of the county, several hours before the opening of August 1, closed the door, stating to parties present that it would not be opened until eight o'clock the following morning; that in closing the door appellant was pushed upon and straddled the neck of appellee, who thereupon rose up from his sitting position upon the doorstep and threw appellant outward and forward into the crowd, and appellant thereupon entirely lost his position.  Appellant requested the sheriff to replace him in the prior position he formerly occupied at the doorstep, but the sheriff declined to do so.  Appellant thereafter, and after one o'clock p. m. of July 31, met one L. E. Crutcher, a deputy county clerk, in the courthouse yard, and swore to his applications for the purchase of the lands in controversy, and said deputy, acting as appellant's agent, carried said applications into the clerk's office through a rear door, and the same were by the county clerk filed between twelve and one o'clock, as hereinbefore stated; another purchaser did the same thing, and a number of others gained entrance into the clerk's office through said rear door and caused their applications to be filed.  In this manner all of the sections of land coming upon the market on August 1 were applied for prior to the opening of the south door, which was done by the sheriff about two o'clock a. m. of August 1, upon the opening of which appellee enter and filed his applications as stated. The county clerk denied acting preferentially or collusively for or with anyone, and stated that his custom was to receive applications whenever and wherever presented for filing, and that the closing of the south door and opening thereof was at the instance of the sheriff alone, who had control of said entrance.  There was some evidence tending to show that the rear door had been kept locked, though the evidence indicated that it had not been so kept after twelve o'clock p. m. July 31. Appellant also denied collusion with the clerk or anyone else, testifying that he simply met Mr. Crutcher, the deputy clerk, accidentally, not knowing that he was going to be at the place where he met him; that his applications had already been prepared, and that he swore to them before said deputy and induced him to act as his agent in taking the applications in and causing them to be filed.  The trial court's findings on the issue under consideration are as follows:  "(c) I find that the acts of William Hanson, county clerk of Glasscock County, Texas, in filing the applications of E. T. Cobb, brought in by his deputy, acting as agent of defendant Cobb, and the acts of defendant Cobb in procuring same to be done, and defeating the rights of plaintiff, were of such character as to constitute fraud against plaintiff, whose rights were thus affected.  (d) I find that such fraud on the part of defendant William Hanson, clerk, and his deputy, L. E. Crutcher, acting with E. T. Cobb, invalidated and rendered void the files of E. T. Cobb, made after twelve o'clock, midnight, July 31, on sections in controversy. (e) I find that such files, being so rendered void, and invalidated, the plaintiff, A. H. Gooch, by virtue of his applications, and a full compliance of the law, is entitled to recover the lands in controversy from the defendant, E. T. Cobb, and it is accordingly so adjudged."  If it

be admitted, though we do not decide, that appellant's action, and that of the clerk, under ordinary circumstances, was fraudulent as against public policy, appellee, nevertheless, in the case before us, is not in position to take advantage thereof. As before stated, it is undisputed that appellant occupied position prior to that of appellee, and that, had he been permitted to retain his position, his application would, in the regular course of events, as insisted upon by appellee, have been first filed. It is also undisputed that, by force exerted by appellee, appellant was deprived of this advantageous position. The contention in appellee's behalf here is that appellee so did in protection of his own position, and without design of obtaining any undue advantage over appellant. The court, in his findings, has not so found, and it is significant that appellee did not so testify on the trial; he, indeed, is silent on the subject. There is also evidence in the record tending to show that appellee and some others, prior to the night of July 31, had a meeting suggestive of a purpose to forcibly obtain advantageous positions at the opening of the door of the courthouse. Appellee's brother testified, among other things, that he witnessed appellee at the time he threw appellant out of position; that the purpose of his presence in the crowd was to see "that anybody didn't jump on" his brother; that "he (appellee) fired him (appellant) out because he was trying to sit down on him; sure, brother did it a purpose. . . . As well as I remember my brother threw him out on his head; I was out in the crowd; Mr. Cobb fell headlong when my brother threw him, and I saw him go over on his head and shoulders on the ground; it is not a fact that I cursed Mr. Cobb when he was making his apology; I did not say he ought to be stamped, and that I would stamp him. . . . He (appellant) first apologized to my brother, then talked rough; he did not explain that that was his position, and try to get it back; I did not hear him call the sheriff to replace him at his position; I was there to see the thing go on, and to see if anybody jumped on my brother. . . . My brother and others had not got together and had an understanding the night before to get charge of the door and throw the others out. A few of them got together and sorter talked the matter over, agreeing that if they wanted to file on the land they would go to the door before filing on it; the meeting was at my mother's, and Earl Chaney, Tom Chaney, Mr. Wysong and Seth Pike were all that I know of being there; I was there at that time, and talked with them, but never told them what I would do. I did not go in the room where they were, as it was none of my business; I did not file on any land; they were talking about the matter when they went out to go home; we did not agree to get our forces together and throw Mr. Cobb out of his position. . . . I was not in the meeting held here in town that day, in which we had an understanding to take charge of the door. It is not a fact that we had an understanding with the sheriff and deputy, and that Mr. Cobb was to be thrown out of his place by reason of shutting the door; never said much to Mr. Cobb when he was thrown out on his head; I told brother that if anybody jumped on him I would see that they did not interfere; I told brother that if anybody sought to interfere with him that I would take care of him—anybody outside of

Mr. Cobb; I would not help him against Mr. Cobb if he beat him to death—would not say a word."

From the evidence as a whole, we have concluded that appellee's force in depriving appellant of his advantageous position neutralizes whatever of irregularity there may have been in the filing of appellant's applications. Appellee, as the plaintiff below, is claiming under rejected applications, and, before he should be heard to complain, and to receive the aid of the court in setting aside the award actually made to appellant by the Commissioner of the General Land Office, we think he should show clearly that he comes with clean hands. This, in our judgment, he has not done, and the judgment will accordingly be reversed, and here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.